IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE HERRINGTON, **Independent Administrator of the Estate of JASON STRAHAN, Deceased,**<br><br>          Plaintiff,<br><br>v.<br><br>**JEREMY B. BRADFORD, MOLLY MARGARITIS, TIMOTHY MUDD, BRIANNA MARKEL, KEVIN BILLINGS, CITY OF STAUNTON, ILLINOIS, ILLINOIS STATE POLICE, and JOHN D. LAKIN,**<br><br>          Defendants. | Case No. 3:20-CV-938-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are four motions to dismiss filed by Defendants Timothy Mudd, Brianna Markel, and John D. Lakin (Doc. 26), Defendants Jeremy B. Bradford and the City of Staunton, Illinois (Doc. 27), Defendants Kevin Billings and the Illinois State Police (Doc. 48), and Defendant Molly Maragaritis (Doc. 50).

### FACTUAL BACKGROUND[1]

The alleged underlying events unfolded in less than an hour's time. At 10:57 p.m. on September 16, 2019, Staunton Police Officer Jeremy Bradford received notice that the Madison County Police Department needed backup after a complaint surfaced that a man in a white shirt and white pants had thrown an object at a vehicle. Dispatch reported that a

---

[1] These facts are reflected in Herrington's Amended Complaint (Doc. 24) and taken as true for the purpose of evaluating the motions to dismiss. These facts, along with all inferences that arise from them, are viewed in the light most favorable to Herrington.

deputy was in foot-pursuit of the suspect. Six minutes after receiving the initial request, Officer Bradford observed a man dressed in a white shirt running from a deputy past his patrol car. The deputy chasing the suspect was Timothy Mudd of the Madison County Police Department. Joining Deputy Mudd, Officer Bradford attempted to apprehend the suspect. He drew his taser initially but holstered it as Deputy Mudd reached the suspect. The two tackled the suspect onto the grass but failed to restrain him despite using a collapsible baton. Officer Bradford drew his taser, this time deploying it and contacting the suspect's right shoulder. Officer Bradford proceeded to "drive-stun" the suspect, drop the taser, pull the suspect's right arm back, and use his legs to restrain the suspect's arms. Officer Bradford walked to his patrol car to radio dispatch and report that he deployed his taser and the suspect was in custody. The suspect was identified as Jason Strahan, and Officer Bradford recognized him from prior contact. Returning to the scene, Officer Bradford and Deputy Mudd evaluated the need for emergency medical services, and Officer Bradford attempted to use his portable radio but it failed to transmit.[2]

Deputy Mudd left Officer Bradford with Strahan while he retrieved his patrol car. Officer Bradford reported that Strahan mumbled nonsense about aliens trying to kill him. Looking for his missing flashlight, Officer Bradford stepped away from Strahan to check his patrol car. Seizing this opportunity, Strahan jumped up and tried fleeing. Officer Bradford grabbed him using a rear-waist takedown. Strahan rolled and tried to stand up when Officer Bradford "flanked" to his left side to subdue Strahan. A struggle ensued. Fresh on the scene, Officer Maragaritis assisted Officer Bradford by handling Strahan's legs. Officers Maragaritis

---

[2] It is unclear whether emergency services were requested at this time.

and Bradford held Strahan down as other officers arrived. While pinned down, Strahan asked for water and for the officers to move because he could not breathe. The officers apparently ignored this request. According to Officer Bradford, Strahan did not appear to be struggling to breathe because he talked, his head was turned, and his nose was unobstructed. He commanded Strahan to stop trying to roll over and to relax. Another officer, Illinois State Police Trooper Kevin Billings, applied leg restraints to Strahan.

Awaiting emergency medical services, Officer Bradford noticed that Strahan was laying still and possibly not breathing. He rolled Strahan over to check for a pulse, which he could not feel through his gloves. Trooper Billings found a weak pulse. At this point, the officers implored emergency services to hurry. Deputy Mudd administered Narcan to Strahan and retrieved an automated external defibrillator ("AED") while Officer Bradford performed sternum rubs. Strahan grunted and moved his head slightly. Deputy Mudd placed the AED pads on Strahan. Officer Bradford reported hearing the AED machine announce that a shock was not needed after analyzing Strahan's heartbeat. So instead, Bradford and Mudd took turns performing chest compressions until medical services arrived. An ambulance transported Strahan to Community Hospital of Staunton. Officer Bradford and Deputy Briana Markel went to the hospital. Tragically, Strahan was pronounced dead at 11:48 p.m. Strahan's autopsy report noted injuries of taser wounds to the back and blunt force injuries to the head, neck, trunk, and extremities.

## Procedural Background

On September 15, 2020, Plaintiff Herrington filed a twenty-seven count Complaint against various Defendants alleging constitutional violations, as well as state law claims (Doc. 1). On January 5, 2021, Timothy Mudd, Brianna Markel, and the Madison County

Sheriff's Department moved to dismiss Herrington's allegations against them for failure to state a claim upon which relief could be granted (Doc. 19). The Court granted that motion but allowed Herrington leave to correct the deficiencies in her complaint (Doc. 23). After Herrington filed her Amended Complaint (Doc. 24), each defendant moved to dismiss for various reasons (Docs. 26, 27, 48, 50). Herrington filed a timely response to each of the motions (Docs. 37, 41, 52, 53).

There are two types of defendants in this case: (1) law enforcement officers in their official capacities and (2) entities that sanction law enforcement (i.e., a city, state police force, and a Sheriff on behalf of the county). Defendants Bradford, Margaritis, Mudd, Markel, and Billings fall into the first category. Defendants City of Staunton, the Illinois State Police, and Sheriff John Lakin, representing Madison County Sheriff's Department, fall into the second category. Against the first category of defendants, Herrington asserts claims of: excessive force, under 42 U.S.C. § 1983 and 1988 and the Fourth and Fourteenth Amendments; willful and wanton conduct resulting in wrongful death under the Illinois Wrongful Death Act 9740 ILCS 180/1 *et seq.*; and willful and wanton conduct justifying recovery under The Illinois Survival Act 755 ILCS 5/27-6. Against the second category of defendants, Herrington asserts claims under the Illinois Wrongful Death Act, the Illinois Survival Act, and under 42 U.S.C. § 1983 and 1988 and the Fourth and Fourteenth Amendments for excessive force[3]; and failure to properly hire, train, supervise, retain, and conduct fair and impartial investigations under Illinois state law.

---

[3] In the Amended Complaint, these claims are labeled as *respondeat superior* claims, however, Herrington acknowledges that this classification is incorrect and argues that labeling a claim under an incorrect legal theory in the complaint is not fatal (Docs. 37, 41). This issue is evaluated below.

All Defendants bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Margaritis also brings her motion pursuant to Rule 12(b)(5).

## LEGAL STANDARD

### I.     12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To avoid dismissal, the complaint must 'state a claim to relief that is plausible on its face.'" *BancorpSouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). However, "[the court] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). To be sure, although a plaintiff "need not plead detailed factual allegations to survive a motion to

dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## II.     12(b)(5) Motion to Dismiss

After commencing a federal suit, a plaintiff must ensure each defendant receives a summons and a copy of the complaint against it. FED. R. CIV P. 4(b), (c)(1). The plaintiff must serve each defendant within 90 days of filing the complaint, unless the plaintiff can show good cause for being unable to do so. FED. R. CIV P. 4(m). The purpose of these service requirements is to provide the parties notice, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to exercise jurisdiction over a defendant. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citations omitted). A defendant may enforce the service of process requirements through a pretrial motion to dismiss. FED. R. CIV. P. 12(b)(5).

<u>ANALYSIS</u>

## I.     First Category of Defendants – Law Enforcement Officers in Official Capacity

Official capacity suits are basically another way of pleading an action against the entity for which the officer is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 381–82 (7th Cir.1988). District courts routinely dismiss claims against officers in their official capacity where the government entity is also named as a defendant because such claims are redundant and unnecessary. *See Michael M. v. Board of Educ. of Evanston Tp. High School Dist. No. 202*, 2009 WL 2258982, at *2 (N.D. Ill. July 29, 2009); *Cruz v. Dart*, 2012 WL 5512275, at *7 (N.D. Ill. Nov. 13, 2012); *Comsys, Inc. v. City of Kenosha*

*Wisconsin,* 223 F. Supp. 3d 792, 802 (E.D. Wis. 2016); *see also Jungels v. Pierce,* ("nothing was added by suing the mayor in his official capacity").

Here, Herrington has named the relevant government entities as defendants, as well as five officers in their official capacities. Herrington's claims against the officers mirror her claims against those entities. Thus, the official capacity claims against the individual officers are redundant and unnecessary.

### a. Defendants Timothy Mudd (Counts VII, VIII, IX) and Brianna Markel (Counts X, XI, XII)

Herrington has sued Timothy Mudd and Brianna Markel in their official capacities in the Amended Complaint along with Sheriff John Lakin as a representative of the Madison County Police Department. The official capacity claims against Mudd and Markel are redundant, and therefore, the Court grants Mudd and Markel's motion to dismiss (Doc. 26) and dismisses Counts VII, VIII, IX, X, XI, and XII.

As to these defendants, Herrington has already been granted leave to amend her complaint once, as Mudd and Markel filed a motion to dismiss (Doc. 19), which the Court granted (Doc. 23). The determination of whether to grant or deny leave to amend depends upon the facts of each case and is within the discretion of the district court. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861–62 (7th Cir. 2001). Here, the factual basis for the official capacity claims is similar and arises from the same events as individual capacity claims, and discovery has not yet commenced. As such, the Court finds it appropriate to grant leave to amend. The Court dismisses the official capacity claims, but allows Herrington leave to amend her complaint to include individual capacity claims against Mudd and Markel, if she so chooses.

### b. Defendant Jeremy Bradford (Counts I, II, III)

Similarly, Jeremy Bradford has been sued in his official capacity. The City of Staunton, Illinois, the entity that employs Bradford, has also been sued. The official capacity claims against Bradford are redundant, and therefore, the Court grants Bradford's motion to dismiss (Doc. 27), and dismisses Counts I, II, and III. For the same reasons as above, the Court grants Herrington leave to amend her complaint to include individual capacity claims against Bradford, if she so chooses.

### c. Defendant Kevin Billings (Counts XIII, XIV, XV)

Different from the other officer defendants, Trooper Billings is a state police officer. Billings is named in his official capacity only. As such, he argues that he is immune from suit as each of the claims are barred by sovereign immunity and the Eleventh Amendment. In light of this argument, Herrington requests leave to amend her complaint to sue Billings in his individual capacity. Accordingly, the Court grants Billings's motion to dismiss (Doc. 48), and dismisses Counts XIII, XIV, and XV but grants Herrington leave to amend her complaint to include individual capacity claims against Billings.

### d. Defendant Molly Margaritis (Counts IV, V, VI)

The claims against Defendant Margaritis create two unique issues. First, Herrington attempts to sue Margaritis in her official capacity as an officer of the City of Benld, Illinois. Margaritis, however, is no longer an officer in Benld. Second, Margaritis was named in the original and amended complaint, but was not served until June 7, 2021—265 days after the commencement of the suit.

Margaritis moves to dismiss the claims against her because Herrington made no effort to serve her within the original 90 days despite naming her in the original complaint.

Margaritis also points to the fact that Herrington first requested a summons be issued on June 3, 2021, almost nine months after the complaint was filed. Alternatively, Margaritis argues the claims should be dismissed substantively for failure to state a claim for which relief can be granted.

In response, Herrington states that she had difficulty identifying who employed Margaritis given the complex facts of this multi-department incident and believed Margaritis moved to work for Benld. Because her state law claims are subject to a one-year statute of limitations, Herrington points out that she would be prevented from refiling a complaint against Margaritis. Herrington asks the Court to accept the out-of-time service for good cause shown, as well as grant leave to seek service on the City of Benld.

Even if service was proper, the Court nevertheless grants Margaritis's motion to dismiss (Doc. 50) and dismisses Counts IV, V, and VI on the basis that Margaritis is not a proper official capacity plaintiff on behalf of the City of Benld. The inquiry then becomes whether the Court should grant Herrington leave to amend her Complaint to assert individual capacity claims against Margaritis, given the improper service, and essentially accept the out-of-time service effected.

A plaintiff bears the burden of showing good cause, and if good cause is shown, the inquiry ends, as the court "must extend the time for service for an appropriate period." FED. R. CIV P. 4(m); *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988). If the plaintiff fails to demonstrate good cause, however, the Seventh Circuit has conveyed a non-exhaustive list of factors that courts can consider for a permissive extension. The factors include: whether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would prevent refiling of the action;

whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the plaintiff ever requested an extension from the court due to difficulties in perfecting service; and whether the plaintiff diligently pursued service during the allotted period. *Jones v. Ramos,* 12 F.4th 745, 749-50 (7th Cir. 2021) (citing *Cardenas*, 646 F.3d at 1006–07).

Even where the balance of hardships tends to favor an extension, the district court is not required to do so and may exercise discretion in holding the plaintiff accountable in their action—or, more accurately, inaction—by dismissing the case. *Cardenas*, 646 F.3d at 1007; *see also Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 341 (7th Cir. 1996).

In this case, Herrington has failed to show good cause. She merely explains that the complexity of the multi-department incident created a challenge in determining where each officer worked. But this does not explain the 175 days that passed in excess of the allotted time to effect service under the federal rules.

Finding a lack of good cause, the Court turns to the list of considerations from Seventh Circuit precedent to determine whether a permissive extension is warranted. Many facts seem to favor accepting the out-of-time service. Margaritis was eventually served, and she identified no substantial prejudice that she would experience if the out-of-time service is accepted. Most importantly, a refiled complaint against Margaritis in her individual capacity would exceed the applicable statute of limitations of one year for Herrington's state law claims, as the underlying incident occurred in 2019. Conversely, there is no allegation that Margaritis evaded service. Herrington also did not file a motion for an extension of time to serve Margaritis or Benld and did not request a summons for almost nine months after filing

suit. And while Herrington claims it was difficult to identify each officer involved in the incident as well as where they worked, she does not offer any proof that she diligently pursued service while endeavoring to uncover this information. The equation, here, seems almost balanced. But placing slightly more weight on the fact that Herrington could not refile her claim due to the statute of limitations, the Court finds that the balance of hardships favors an acceptance of the out-of-time service.

Accordingly, the Court accepts the out-of-time service and allows Herrington leave to amend her complaint with individual capacity claims against Margaritis.

## II.     Second Category of Defendants – Entities that Sanction Law Enforcement

It is well settled that a municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-95 (1978). In the Amended Complaint, Herrington's claims against the government entities are labeled as *respondeat superior* claims, however, Herrington acknowledges that this classification is incorrect and argues that labeling a claim under an incorrect legal theory in the complaint is not fatal (Docs. 37, 41). The Court agrees that the substance of the claims do not reflect a theory of liability under *respondeat superior*, and thus, will not dismiss them on this ground.

To establish liability against a municipality or government entity under § 1983, a plaintiff must show the existence of an "official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). Further, the plaintiff must demonstrate that the purported official policy or custom caused the alleged constitutional violation as the "moving force" behind it. *Id.* (internal quotations and citations omitted). The Seventh Circuit has explained

that the essential element of municipal liability under *Monell* can be proven in three ways by showing: (1) the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers; (2) the constitutional deprivation happened pursuant to the entity's custom, even though such a custom has not been formally approved through the official decision-making channels; or (3) the entity's policy or custom is made by those who edicts or acts may fairly be said to represent official policy. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th. Cir. 2017) (internal citations and quotations omitted).

    a. **John D. Lakin (Counts XXIV, XXV, XXVI, XXVII)**

Defendant Lakin was added to this action through the Amended Complaint filed on April 29, 2021 (Doc. 24), as a substitute for the Madison County Police Department, which did not exist as an entity. Herrington alleges four claims against Lakin in his official capacity. Lakin argues that, in her Amended Complaint, Herrington does not state a claim upon which relief can be granted because she fails to allege sufficient facts showing that any constitutional deprivation against the decedent, Strahan, was caused by an official policy, custom, or usage of Madison County. Primarily, Lakin argues that the allegations are conclusory and fail to show any widespread custom or practice as opposed to a random event. Moreover, Lakin asserts that Herrington fails to allege sufficient facts that Lakin directly caused a constitutional violation as a policymaker.

The relevant allegations against Lakin in the Amended Complaint state:

> ¶¶ 247, 257, 268: At all times relevant, Defendant Sheriff John D. Lakin's actual and/or apparent agents, Deputy Mudd and/or Deputy Markel, were acting in accordance with an official policy, unwritten custom, or pattern and practice of the Madison County Sheriff's Department, as issued and/or upheld by Defendant Sheriff John D. Lakin.

> ¶¶ 248, 258, 269: The official policy, unwritten custom, or pattern or practice of conduct established by Defendant Sheriff John D. Lakin and the Madison County Sheriff's Department were the moving force behind the deprivation(s) suffered by Jason Strahan.
>
> ¶ 275: At all times relevant, Defendant Sheriff John D. Lakin, had a duty, to provide responsible and effective operations of his police department, as well as a duty to establish proper policies, customs, and regulations within the department.
>
> ¶ 276: At all times relevant, on information and belief, Defendant Sheriff John D. Lakin, breached his duty by: failing to hire qualified officers; failing to adequately train officers in detentions, seizures, arrests, use of force, use of weapons, medical emergency, and deescalation; failing to supervise officers; failing to retain qualified officers; and/or failing to conduct fair and impartial investigations.
>
> ¶ 277: As a direct and proximate result of the aforementioned conduct, Jason Strahan was deprived of his right to be free from unreasonable detention, for due process of law, and the rights secured to him by the United States Constitution.

Herrington argues that these allegations are sufficient because they indicate that a policy, custom, or practice of the governmental entity was a moving force behind the constitutional deprivation suffered by decedent, Strahan. These allegations—paired with the factual allegations surrounding the events of Strahan's death—Herrington argues, are sufficient to plead a § 1983 claim against Lakin. Herrington also contends that she is only required to plead the general contours of her claim and almost all pretrial fact-finding should be pursued through discovery. She notes that her FOIA request was denied and does not have access to more detailed records at this time.

Here, the parties agree that in Illinois a sheriff has "final policy-making authority."[4] Thus, Sheriff Lakin is the proper party for an official capacity claim. Moving to the

---

[4] As support, both parties cite *Hernandez v. Cook Cnty. Sheriff's Office,* 2014 WL 1339686, at *3 (N.D. Ill. Apr. 3, 2014).

allegations, the Court agrees with Lakin that they are conclusory, including only boilerplate language claiming that a policy or custom was the moving force behind the alleged constitutional violation against Strahan. Even construing all facts and inferences in favor of Herrington, the Amended Complaint falls short. Herrington fails to identify a policy or any ongoing or recurring incidents of which Lakin or the officers were aware. She makes allegations only of the specific circumstances of Strahan's death, a one-time incident. There is no bright line rule defining a "widespread custom or practice" and, while no consensus exists as to how frequently the conduct must occur to create this inference, the Seventh Circuit recognizes that it must be more than one instance. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). The conduct alleged here does not warrant an inference of widespread custom or policy.

Similarly with failure to train liability under *Monell,* differing from traditional *respondeat superior* liability, a claim arises when there is a known pattern of tortious conduct demonstrating the need for additional training, rather than a one-time incident involving negligence. *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Here, Herrington alleges that Sheriff Lakin failed to adequately train officers in detentions, seizures, arrests, use of force, use of weapons, medical emergency, and de-escalation, failed to supervise officers, failed to retain qualified officers, and failed to conduct fair and impartial investigations. This conclusory language, even when paired with the factual allegations of the incident surrounding Strahan's death, does not create a plausible claim of liability with respect to Lakin. Such allegations, without more, evidence a one-time event and are not sufficient to state a *Monell* claim based upon a failure to train theory. *See Crossley v. Dart,* 2022 WL 444115, at *2 (N.D. Ill. Feb. 14, 2022) (where the

court found that allegations of the plaintiff's brutal beating paired with allegations that the sheriff knew about ongoing officer misconduct for decades raised an inference of a pattern of conduct, rather than a one-time occurrence). The Court appreciates that discovery enables a plaintiff to substantiate their allegations more fully, but here, Herrington has not plausibly asserted that Madison County or Sheriff Lakin caused a constitutional violation against Strahan. Accordingly, Sheriff Lakin's motion to dismiss (Doc. 26) is granted, and Counts XXIV, XXV, XXVI, and XXVII are dismissed without prejudice. The Court grants Herrington leave to amend her complaint as to these counts.

### b. City of Staunton (Counts XVI, XVII, XVIII, XIX)

The allegations against the City of Staunton, as well as the parties' arguments, are substantially similar to those concerning Sheriff Lakin. The same analysis, likewise, applies. The Court finds that Herrington's Amended Complaint is insufficient, as she alleges only the facts surrounding the decedent's death, along with conclusory allegations of a purported custom or policy and failure to train and hire. As discussed, these allegations do not lead to an inference that a custom or policy existed, let alone caused, the underlying constitutional deprivation. Accordingly, the City of Staunton's motion to dismiss (Doc. 27) is granted, and Counts XVI, XVII, XVIII, and XIX are dismissed without prejudice. The Court grants Herrington leave to amend her complaint as to these counts.

### c. Illinois State Police (Counts XX, XXI, XXII, XXIII)

In contrast to the other government entity defendants, the Illinois State Police ("ISP") is a state agency. As such, ISP argues that it is immune from suit as each claim is barred by sovereign immunity and the Eleventh Amendment.

Herrington concedes that Counts XXII and XXIII, which seek recovery under § 1983 are not viable. Herrington contends that the Eleventh Amendment does not bar Counts XX and XXI, which seek to hold ISP liable for the misconduct of Trooper Billings, however, concedes that those claims are not viable in this Court. Herrington thus seeks dismissal without prejudice of these claims to potentially proceed in state court.

Accordingly, ISP's motion to dismiss (Doc. 48) is granted, and Counts XXII and XXIII are dismissed with prejudice. Without opining on the merit of Herrington's strategy to proceed in state court, Counts XX and XXI are dismissed without prejudice. ISP shall be terminated as a party to this action, as no claims will proceed in this Court against it.

### d. City of Benld

Herrington, in neither her original nor amended complaint, asserted claims against the City of Benld but asks the Court for additional time to serve the City of Benld in her response to Defendant Margaritis's motion to dismiss (Doc. 53). As discussed above, Herrington attempted to file an official capacity suit against Margaritis as an officer of Benld. Margaritis, however, is no longer an officer of Benld. Herrington does not provide argument in her response as to why the Court should grant additional time to seek service on the City of Benld. As such, the Court declines to grant additional time. If Herrington was unsure as to which entity employed Margaritis, she could have chosen, as she did with all other defendants, to sue not only the officer, but the government entity as well. She did not do so. The Court denies Herrington's request for additional time to serve the City of Benld.

## Conclusion

For the reasons set forth above, the Motion to Dismiss (Doc. 26) filed by Defendants Mudd, Markel, and Lakin is **GRANTED**, and Counts VII, VIII, IX, X, XI, XII, XXIV, XXV,

XXVI, and XXVII are **DISMISSED without prejudice**. The Motion to Dismiss (Doc. 27) filed by Defendants Bradford and the City of Staunton is **GRANTED**, and Counts I, II, III, XVI, XVII, XVIII, and XIX are **DISMISSED without prejudice**. The Motion to Dismiss (Doc. 48) filed by Defendants Billings and the Illinois State Police is **GRANTED**, and Counts XIII, XIV, XV, XX and XXI are **DISMISSED without prejudice**. Counts XXII and XXIII against the Illinois State Police are **DISMISSED with prejudice**. The Motion to Dismiss (Doc. 50) filed by Defendant Margaritis is **GRANTED**, and Counts IV, V, and VI are **DISMISSED without prejudice.** Further, the Court denies Herrington's request for additional time to serve the City of Benld.

The Court grants Herrington leave to file a second amended complaint within **30 days** to rectify the issues identified in this order, otherwise this case will be dismissed in its entirety. The Clerk of Court is **DIRECTED** to terminate Defendant Illinois State Police from this action.

**IT IS SO ORDERED.**

DATED:   March 28, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**