IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE HERRINGTON, Independent Administrator of the Estate of JASON STRAHAN, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>JEREMY B. BRADFORD, MOLLY MARGARITIS, TIMOTHY MUDD, KEVIN BILLINGS, CITY OF STAUNTON, ILLINOIS, and JOHN D. LAKIN,<br><br>    Defendants. | Case No. 3:20-CV-00938-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case arises from a fatal interaction between Jason Strahan and several police officers employed by various law enforcement entities.[1] Amidst a foot-pursuit in an effort to catch Strahan, officers wrestled him to the ground, tased him, and used force to restrain him. Strahan then jumped up and attempted to flee, but an officer grabbed him and took him down again. Once subdued, Strahan continued to struggle as other officers intervened to restrain his legs and pin him down. Strahan sought water and pleaded with the officers to move as breathing proved difficult. These requests were ignored. At some point, emergency medical services arrived. Before receiving medical attention, Strahan laid stiff and still with only a faint pulse. In the meantime, the officers attempted to use Narcan and an automated

---

[1] For a more detailed recounting of the alleged facts, see the Court's Order addressing several prior motions to dismiss. (Doc. 64). Though that Order addresses a prior iteration of the complaint, the factual allegations have not substantially changed in the operative Third Amended Complaint. (Doc. 95).

external defibrillator ("AED") along with chest compressions. Afterwards, an ambulance transported Strahan to the hospital where he was tragically pronounced dead. The entire incident unfolded in less than an hour. Strahan's autopsy report noted injuries of taser wounds to the back and blunt force injuries to the head, neck, trunk, and extremities.

Plaintiff Stephanie Herrington, as the administrator of Strahan's estate, initiated this action in September 2020. (Doc. 1). The Court granted a motion to dismiss in March 2021, allowing Herrington leave to correct several identified deficiencies in her complaint. (Doc. 23). After she filed her First Amended Complaint, Defendants filed several motions to dismiss. (Docs. 24, 26, 27, 48, 50). These motions were also granted with leave for Herrington to amend her complaint. (Doc. 64). Herrington has since filed a Second and Third Amended Complaint. (Docs. 74, 95). Three defendants—John D. Lakin, Kevin Billings, and City of Staunton, Illinois—filed motions to dismiss the operative Third Amended Complaint. (Docs. 103, 104, 109). Herrington filed timely responses to each motion. (Docs. 116, 117, 118).

Relevant to the present motions, Herrington asserts claims of willful and wanton conduct resulting in wrongful death under the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, willful and wanton conduct under the Illinois Survival Act, 755 ILCS 5/27-6, and excessive force under 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments against Defendants Lakin, Billings, and City of Staunton. (Doc. 95). Against Defendants Lakin and City of Staunton, Herrington also asserts claims for failure to properly hire, train, supervise, retain, and conduct fair and impartial hearings under 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments. (*Id.*).

All Defendants bring their respective motions pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Billings also brings his motion pursuant to Rule 12(b)(1).

## LEGAL STANDARD

### I.  12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To avoid dismissal, the complaint must 'state a claim to relief that is plausible on its face.'" *Bancorpsouth, Inc. v. Fed. Ins. Co.*, 873 F.3d 582, 586 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). "But [the court] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### II.  12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), a defendant can move to dismiss the complaint for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of proof as the party

asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). As with a motion to dismiss under 12(b)(6), when ruling on a motion to dismiss pursuant to Rule 12(b)(1), the court must accept as true all well-pleaded factual allegations while drawing all reasonable inferences in favor of the plaintiff. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). Of course, the court can "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*

## ANALYSIS

### I.   Defendant John D. Lakin (Counts XVII, XVIII, XIX, and XX)

Defendant Lakin was added to this action through the Amended Complaint filed on April 29, 2021 (Doc. 24), as a substitute for the Madison County Police Department, which does not exist as an entity. In response to the Third Amended Complaint, Lakin now moves to dismiss the complaint arguing that under Illinois Law a sheriff cannot be held liable for the willful and wanton acts of his deputies necessitating dismissal of Counts XVII and XVIII, sheriffs are legally separate from the county, and Herrington fails to state a claim under *Monell* requiring dismissal of Counts XIX and XX.

#### a.   Counts XVII & XVIII - Liability for Willful and Wanton Conduct

Sheriff Lakin first argues that Counts XVII and XVIII, under the Illinois Wrongful Death Act and Illinois Survival Act, should be dismissed because he cannot be held liable for the willful and wanton misconduct of his officers under a theory of *respondeat superior*. The Illinois Counties Code, according to Lakin, prohibits such liability because a sheriff cannot properly be held liable for the willful and wanton acts of his deputies. Lakin cites 55 ILCS

5/3-6016, which dictates, "The sheriff shall be liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." In response, Herrington claims that Lakin can be held liable under the Illinois Wrongful Death and Survival Acts under a *respondeat superior* theory because each of these statutes contemplate such actions. Further, Herrington argues that the Illinois statute cited by Lakin, 55 ILCS 5/3-6016, is irrelevant to the claims in this case.

Section 5/3-6016 is silent regarding willful and wanton conduct. An Illinois Appellate Court interpreting this statutory provision found that the Counties Code actually expands, not limits, a sheriff's liability to include negligent acts of his deputies along with any liability the sheriff has for intentional and wanton conduct under traditional *respondeat superior* principles. *Brown v. King*, 767 N.E.2d 357, 364 (Ill. App. Ct. 2001). Lakin points to several cases including *Chaney v. City of Chicago*, 901 F. Supp. 266 (N.D. Ill. 1995), *Harris v. Sheahan*, 98 C 1271, 1998 WL 831822, at *2 (N.D. Ill. Nov. 25, 1998), and *J.P. Miller Artesian Well Co. v. County of Cook*, 352 N.E.2d 372 (Ill. App. Ct. 1976), to bolster his arguments that sheriffs cannot face liability for willful or wanton conduct. The *Brown* court, in reaching its conclusion, distinguished *Chaney* and *Miller Artesian* stating that the holdings of those cases "stand for nothing more than that liability for the Sheriff for the intentional and wanton acts of his employees may not be premised on [S]ection 3-6016." *Brown*, 767 N.E.2d at 364. The court emphasized that *Chaney* and *Miller Artesian* should not be used "as a springboard to finding that [S]ection 3-6016, through its silence on the subject, defeats common law claims of *respondeat superior* regarding intentional conduct." *Id.* In doing so, it disagreed with the use of *Chaney* and *Miller Artesian* in *Harris v. Sheahan*, another case referenced by Lakin. *Id.*

Here, as Herrington argues, the claims for willful and wanton conduct against Lakin are premised on common law *respondeat superior* liability under the Illinois Wrongful Death Act and the Illinois Survival Act, not Section 3-6016. The Court has no reason to deviate from the Illinois Appellate Court's decision in *Brown*, and finds that Section 3-6016 does not preclude Herrington's state-law claims against Lakin. The Court denies Lakin's motion to dismiss as to Counts XVII and XVIII.

### b. Proper party – County or Sheriff

Sprinkled in his motion, Lakin alludes to the fact that the appropriate governmental entity for this suit is Madison County, Illinois, not Lakin in his official capacity. Lakin argues that the Seventh Circuit and Supreme Court of Illinois have continuously held that a county sheriff is an independently elected official who is legally separate from a county itself.

To the extent that Lakin argues he is the improper party for this suit, he is wrong. It is true that under Illinois law, county sheriffs are agents of the county sheriff's department, not the county itself. *Moy v. County of Cook*, 640 N.E. 2d 926, 929-31 (Ill. 1994). As such, a county cannot be held vicariously liable for a sheriff's conduct, because a traditional employer-employee relationship does not exist between a sheriff and a county. *Id.* Because the county funds the office of the sheriff, however, the county is required to pay a judgment entered against a sheriff's office in an official capacity. *Carver v. Sheriff of LaSalle County,* 787 N.E.2d 127, 129 (Ill. 2003). Accordingly, a county is a necessary party in any suit seeking damages from an independently elected county officer in an official capacity. *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir. 2003). To the extent that Herrington seeks damages from Lakin in his official capacity, Madison County is a necessary party only for purposes of

indemnification and would need to be added. Even so, Lakin remains an appropriate subject of Herrington's complaint.

### c. Counts XIX & XX – Failure to State *Monell* Claims for Excessive Force and Failure to Train

As to Counts XIX and XX, Lakin first argues that Herrington is attempting to impermissibly bring an excessive force claim on the basis of *respondeat superior* liability. Next, according to Lakin, Herrington failed to sufficiently plead that any constitutional violation suffered by Strahan resulted from an express municipal policy, widespread custom or practice, or a decision by Lakin (as a final policymaking authority) for the excessive force and the failure to train claims. Lakin contends that, at most, Herrington's allegations amount to an isolated, random incident rather than a policy issue that caused a constitutional violation.

In response, Herrington makes clear that Counts XIX and XX are not raised under a theory of *respondeat superior* but rather *Monell* liability. She argues that her amended complaint contains sufficient details to substantiate her *Monell* claims. In particular, she highlights the allegations that identify deficiencies with specific policies relating to detentions, seizures, arrests, uses of force, uses of weapons (especially on a person suspected of drug use or mental infirmities), medical emergencies, and de-escalations.

To survive a motion to dismiss on a *Monell* claim, a plaintiff must plead facts that plausibly suggest the deprivation of a constitutional right stemming from a municipal action, like a deliberate policy or custom, that acted as the moving force behind the deprivation. *Thomas v. Neenah Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023). Municipal liability rests on: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or

practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). There is no bright line rule defining a "widespread custom or practice" and, while no consensus exists as to how frequently the conduct must occur to create this inference, the Seventh Circuit recognizes that it must be more than one instance. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010).

In her operative complaint, Herrington does not identify an express policy that caused a constitutional violation when enforced. If she aims to assert an implicit policy or a gap in express policy, she must allege facts that demonstrate a true municipal policy predominated the incident, not simply that a random event occurred. *Estate of Sims ex rel. Sims*, 506 F.3d at 515. Likewise, if Herrington intends to root her claim against Lakin in a municipal custom or practice, she must allege facts allowing "a reasonable inference that the practice is widespread and that the specific violations complained of were not isolated incidents." *Thomas v. Neenah Joint School District*, 74 F.4th at 524 (internal quotation marks omitted). The same is true for failure to train liability under *Monell*. For that claim, Herrington must plausibly allege facts that indicate the existence of a known pattern of tortious conduct demonstrating the need for additional training, rather than a one-time incident involving negligence. *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407-08 (1997)).

Here, Herrington added some detail to her excessive force allegations against Lakin stating that he promulgated policies, customs, or practices concerning apprehension and restraint, use of force, utilizing a taser against persons suspected of mental infirmities or drug

use, medical treatment, and providing or calling for emergency medical services. But simply listing the general topics of possible policies does not cure the issues with the excessive force and failure to train claims against Lakin. These allegations remain conclusory with boilerplate language. Even combined with the factual allegations surrounding Strahan's death, the listed deficient or unconstitutional policies do not nudge Herrington's claims from speculative or conceivable to plausible. Aside from general allegations that, on information and belief, Lakin's official policies condoned excessive force, Herrington does not provide any supporting allegations that could create an inference that the circumstances leading to Strahan's death resulted from a widespread practice. Rather, again, Herrington's amended complaint details only an isolated incident. This is also not a situation where Herrington can forgo the requirement to identify more instances of excessive force. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (allegations of an individual circumstance *plus* a standard arrest warrant application with visible deficiencies created a reasonable inference that the city maintained a policy, custom, or practice that caused a constitutional deprivation).

Turning to the failure to train allegations, Herrington still alleges that Sheriff Lakin failed to hire qualified officers, failed to adequately train officers in detentions, seizures, arrests, use of force, use of weapons, medical emergency, and de-escalation, failed to supervise officers, failed to retain qualified officers, and failed to conduct fair and impartial investigations. She added the same conclusory language described above with the excessive force allegations. These allegations, without more, evidence a one-time event and are not sufficient to state a *Monell* claim based upon a failure to train theory.

Even after leave to amend, Herrington has not plausibly alleged that Sheriff Lakin caused a constitutional violation against Strahan through an express policy or some kind of

widespread custom or practice. Accordingly, Sheriff Lakin's motion to dismiss is granted as to Counts XIX and XX.

## II.     Defendant Kevin Billings (Counts X, XI, and XII)

Billings, an Illinois State Trooper who assisted officers in restraining decedent Strahan during the underlying incident, raises two primary arguments against Herrington's Third Amended Complaint: (1) she failed to state a claim for excessive force under 42 U.S.C. § 1983 in Count XII, and (2) the state-law tort claims, Counts X and XI, must be dismissed for lack of jurisdiction.

### a. Count XII - Failure to State a Claim for Excessive Force

First, Billings argues that Herrington failed to state a claim for excessive force in Count XII because she simply alleged that Billings *restrained* Strahan. Billings highlights that Herrington's factual allegations only show that Billings placed leg restraints on Strahan, checked Strahan for a pulse, and called for emergency services to arrive sooner. Billings contends that these alleged actions do not amount to unreasonable or excessive force. On the other hand, Herrington argues that, while the operative complaint lacks specific details about the manner in which Billings placed leg restraints on Strahan, a logical inference follows that Billings's conduct could have been excessive as Strahan sustained multiple, severe injuries during restraint, and Billings heard, then ignored, Strahan's complaints that he could not breathe. Herrington also states that Billings failed to intervene in the other law enforcement officers' violation of Strahan's rights especially when he ignored Strahan's complaints of inhibited breathing.

Typically, excessive force claims arising in the context of arrest or investigatory stop of a free citizen fall under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-96

(1989). Such claims are evaluated on the Fourth Amendment's reasonableness standard. *Id.* at 395-96. Under the objective reasonableness standard, a plaintiff must establish that an "officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018). Moreover, law enforcement officers have a responsibility to intervene to stop other officers who summarily punish an individual in their presence or otherwise within their knowledge. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An officer who is present and fails to intervene to prevent other officers from infringing the constitutional rights of citizens is liable under Section 1983, if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen ha[d] been unjustifiably arrested, or (3) that any constitutional violation ha[d] been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.* (emphasis in original).

According to the Third Amended Complaint, Billings arrived at the scene at 11:20 p.m. after Strahan informed other officers of his difficulty breathing. (Doc. 95, ¶¶ 37-39). Those other officers instructed Strahan to stop rolling around and to relax. (*Id.*). When Billings arrived, officers on top of Strahan pinned him face down on the ground while restraining him. (*Id.* at ¶¶ 34-40). Billings approached and placed additional restraints on Strahan's legs, which were later replaced by another officer's restraints. (*Id.* at ¶ 40). Shortly after, Strahan appeared still with shallow breath. (*Id.* at ¶ 41). Officers rolled Strahan onto his back and took his pulse multiple times. (*Id.* at ¶¶ 42-43). Billings personally checked Strahan's pulse and found only a faint pulse. (*Id.* at ¶ 43). The officers called to expedite emergency medical services while attempting some life-saving measures on-scene, an ambulance arrived and transported Strahan to a hospital, and Strahan died at 11:48 p.m. (*Id.* at ¶¶ 44-48). Again,

Strahan's autopsy revealed injuries of taser wounds to the back and blunt force injuries to the head, neck, trunk, and extremities. (*Id.* at ¶ 49).

While Herrington's allegations carve out a smaller role for Billings than for other officers, accepting the allegations as true and drawing all reasonable inferences in Herrington's favor, she has alleged enough to state a claim for excessive force against Billings. The facts, as alleged, demonstrate that when Billings arrived Strahan was restrained and struggling to breathe with officers on top of him. At this point, Billings applied more restraints to Strahan's legs. Billings, as someone who checked Strahan's pulse after flipping him over, was positioned to observe Strahan's lack of movement and breathing. He did not attempt to pull other officers off of Strahan or address the obstructed breathing complaints. Strahan died only 28 minutes after Billings arrived. While Billings missed the prior action, he joined the scene at a critical point.

These allegations, while not a model of specificity or detail, are sufficient to create an inference that Billings applied unnecessary restraints to an already restrained and subdued individual and that he participated or sat idly by while other officers put pressure on Strahan's back causing him to stop breathing. When Billings arrived, Strahan was alive and complaining to officers about his difficulty breathing. Within 28 minutes of Billings's arrival, Strahan died with documented blunt force injuries to his head, neck, trunk, and extremities. The amended complaint does not specifically implicate Billings as the cause for any of these injuries, but it does identify Billings as a part of the cluster of officers restraining Strahan just before his death. Moreover, Billings argues that, having only spent 28 minutes on the scene, he had virtually no opportunity to intervene to prevent any unconstitutional actions by other officers, especially considering that the tasering and physical altercations occurred before he

arrived. But the allegations establish that Billings, while on the scene, witnessed officers on top of a face-down Strahan, heard Strahan's complaints of difficulty breathing, and observed Strahan's breathing slow and pulse weaken. These allegations create a reasonable inference that Billings failed to intervene. At this stage, the complaint contains substantial enough allegations to state a plausible claim.

### b. Qualified Immunity

Even if the complaint is sufficient, Billings argues that he is entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Weinmann v. McClone*, 787 F.3d 444, 447-48 (7th Cir. 2015). A constitutional right is "clearly established" for qualified immunity purposes when the contours of that right are sufficiently clear that a reasonable officer would understand that his or her conduct violates that right. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013).

Certainly, at the time of the underlying incident, it was clearly established that the use of deadly force to apprehend a suspect is unreasonable, absent probable cause that the suspect is dangerous or has committed a violent crime. *Jacobs v. City of Chicago,* 215 F.3d 758, 774 (7th Cir. 2000) (quoting *McDonald by McDonald v. Haskins*, 966 F.2d 292, 294–95 (7th Cir. 1992)). Moreover, the constitutionally permissible level of force to execute a seizure fluctuates with the threat of danger posed by the individual being seized. *See Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993). Furthermore, the Seventh Circuit has clearly established the elements of a claim for failing to intervene since at least 1994. *Conforti v. City of Franklin*, 559 F. Supp. 3d 815, 820 (E.D. Wis. 2021) (referencing *Yang,* 37 F.3d 282 (7th Cir. 1994)).

Here, with respect to Billings, the allegations demonstrate that he applied additional restraints on Strahan, who was already restrained and subdued by other officers in a prone position. According to the amended complaint, he also knowingly failed to respond to Strahan's cries of hindered breathing and to prevent the other officers from pressing into Strahan's back while lying down restrained. Notably, "even conclusory and unenlightening language in a complaint may be sufficient to defeat a motion to dismiss based on qualified immunity," because a plaintiff need not anticipate such an affirmative defense and allege every fact necessary to defeat it in the complaint. *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 906 (N.D. Ill. 2017).

At this stage, based on the allegations in the Third Amended Complaint, the Court cannot say that Billings is entitled to qualified immunity. Perhaps, with the benefit of discovery, the qualified immunity defense may become more persuasive at a later stage of litigation. For now, Billings's motion to dismiss is denied as to Count XII.

### c. Counts X & XI – Illinois Tort Claim Jurisdiction & Sovereign Immunity

Next, Billings argues that the Illinois Wrongful Death and Survival Act claims, Counts X and XI, must be dismissed for lack of jurisdiction as the Illinois Court of Claims enjoys exclusive jurisdiction over claims that fall under the Illinois State Lawsuit Immunity Act, 745 ILCS 5/0.01, *et seq*. Billings contends that Herrington's state-law tort claims of willful and wanton conduct are barred by sovereign immunity.

Herrington acknowledges that the Illinois Court of Claims has exclusive jurisdiction for claims against the State of Illinois. But she argues that she raised the state-law claims against Billings in his personal, not official, capacity and that Billings acted outside the scope

of the authority of the Illinois State Police by engaging in excessive force and constitutional violations.

Under Illinois law, a suit against a state official in his individual capacity, as is at issue here, may be considered a suit against the state itself if: (1) there are no allegations that the State's agent or employee acted beyond the scope of his or her authority through wrongful acts; (2) the allegedly breached duty was not owed to the public generally independent of the fact of State employment; and (3) the underlying actions involve matters ordinarily within the employee's normal and official functions of the State. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). When a state agent acted in violation of statutory or constitutional law or in excess of his conferred authority, sovereign immunity affords no protection. *Id.* "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Murphy v. Smith*, 844 F.3d 653, 659 (7th Cir. 2016), *aff'd*, 138 S. Ct. 784 (2018).

While Billings argues that responding to emergency calls and applying restraints on suspects fell within the scope of his employment, he did not have authority to use excessive force or violate Strahan's constitutional rights. Here, Herrington alleges that Billings engaged in excessive force in violation of Strahan's constitutional rights, which at this preliminary stage, appears to serve as the foundation for the state-law claims. As with allegations concerning constitutional violations, state sovereign immunity does not bar state-law claims based on that same unconstitutional conduct. *See, e.g., Murphy*, 844 F.3d at 660 (finding that state sovereign immunity did not bar state-law claims for battery where the officer-defendant's conduct amounted to unconstitutional excessive force); *Whitlock v. Brueggemann*, 682 F.3d 567, 590 (7th Cir. 2012) (explaining that, where the Illinois State Police defendants

allegedly violated plaintiff's constitutional rights, state sovereign immunity did not afford protection or bar state-law claims).

As such, Herrington can proceed with her state-law claims against Billings, and Billings's motion to dismiss is denied as to Counts X and XI.

### III. Defendant City of Staunton, Illinois (Counts XIII, XIV, XV, and XVI)

The City of Staunton filed an answer responding to the state-law claims in Counts XIII and XIV. Thus, the City of Staunton only seeks dismissal of the federal constitutional claims in Counts XV and XVI for failure to state a claim.

#### a. Counts XV & XVI – *Monell* Claims for Excessive Force and Failure to Train

As with Defendant Lakin, Herrington brings a *Monell* claim against the City of Staunton in Count XV for excessive force and Count XVI for failure to properly hire, train, supervise, retain, and conduct a fair and impartial hearing. Like Lakin, the City of Staunton argues that the factual allegations in Herrington's complaint are conclusory, boilerplate, and fail to establish that an official policy or custom acted as the moving force behind the alleged constitutional violations. Particularly, the City of Staunton contends that Herrington fails to identify a policy or any ongoing or recurring incidents of which the City of Staunton or other officials were aware, aside from the one-time incident involving Strahan's death.

Alternatively, Herrington argues that her amended complaint provides the City of Staunton fair notice of the claims against it regarding the constitutional deprivations suffered by Strahan at the hands of its officer. Herrington also emphasizes that she need not establish multiple events where injuries were caused by the City of Staunton's widespread customs or practices, because she alleged the constitutional violation occurred through an official policy not a widespread custom.

The allegations against the City of Staunton, as well as the parties' arguments, are substantially similar to those concerning Sheriff Lakin. The same analysis, likewise, applies. Herrington added only minimal allegations to the excessive force claim within the latest iteration of her complaint. The new allegations include claims that the City of Staunton promoted official policies and procedures, or other unwritten customs, patterns, or practices of conduct regarding the apprehension of, restraint of, and use of force against citizens. She also alleges, on information and belief, that these policies and customs provided guidance to officers on various topics including, but not limited to, use of force, limiting taser use against persons suspected of mental infirmities or drug use, medical treatment, and providing or calling for emergency medical services. As discussed above with Lakin, these allegations are insufficient and create no reasonable inference of a custom, policy, or practice that acted as the moving force behind Strahan's death. Reading the amended complaint as a whole, Herrington only alleges a one-time incident involving Strahan. Herrington fails to even allude to an ongoing, widespread practice of excessive force. As with her excessive force claims, Herrington added essentially the same allegations for her failure to train claims. For the same reasons, these allegations do not lead to an inference that a custom or policy existed, let alone caused, a constitutional deprivation. Additionally, the fact that Herrington added nearly identical allegations to both the excessive force and failure to train claims for two different entities—Lakin, in his official capacity, and the City of Staunton—reinforces the conclusion that these allegations are conclusory and boilerplate.

As to Herrington's final argument, that she need not plead more than one instance when a *Monell* claim is based on an official policy, she conflates the applicable rule. She cites a rule from *Howell v. Wexford Health Sources, Inc.* to support the notion that, as her *Monell*

claim is based on official policies rather than customs or practices, she need not establish multiple events or provide other supporting allegations. In her response, Herrington summarizes the rule as, "A Monell claim allows a plaintiff to establish liability of a municipality by showing the violation was caused by (1) an official policy, (2) a widespread custom, or (3) an official with final policymaking authority." (Doc. 116, p. 5). But *Howell* states, "A plaintiff must show that the violation was caused by (1) an *express government policy*; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (emphasis added). Here, Herrington does not allege or identify any *express* policy used by the City of Staunton that, when enforced, created a constitutional deprivation. Nor does she point to any specific language in any policy that is unconstitutional when applied. Rather, she vaguely references purported official policies on the topics of use of force, restraint, apprehension, and coordinating medical services. This does not suffice or overcome the need to substantiate a practice or custom with more than one incident.

Accordingly, the City of Staunton's motion to dismiss is granted, and Counts XV and XVI are dismissed.

## Conclusion

For the reasons set forth above, the Motion to Dismiss (Doc. 103) filed by Defendant Lakin is **GRANTED in part** as to Counts XIX and XX and **DENIED in part** as to Counts XVII and XVIII. Defendant Billings's Motion to Dismiss (Doc. 104) is **DENIED**. The Motion to Dismiss (Doc. 109) filed by Defendant City of Staunton, Illinois is **GRANTED**. Accordingly, Counts XV, XVI, XIX, and XX are **DISMISSED.**

With the resolution of these motions to dismiss, Herrington proceeds on the following counts: Counts I (state-law wrongful death), II (state-law survival act), and III (excessive force) against Defendant Jeremy B. Bradford; Counts IV (state-law wrongful death), V (state-law survival act), and VI (excessive force) against Defendant Molly Margaritis; Counts VII (state-law wrongful death), VIII (state-law survival act), and IX (excessive force) against Defendant Timothy Mudd; Counts X (state-law wrongful death), XI (state-law survival act), and XII (excessive force) against Defendant Kevin Billings; Counts XIII (state-law wrongful death) and XIV (state-law survival act) against City of Staunton, Illinois; and Counts XVII (state-law wrongful death) and XVIII (state-law survival act) against Defendant Sheriff John D. Lakin.

**IT IS SO ORDERED.**

DATED:  September 26, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**